**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALFRED SMITH, | Civil Action No. 16-5355 (ES) (JAD) |
| Plaintiff, | |
| v. | OPINION |
| THE CITY OF PLAINFIELD, et al., | |
| Defendants. | |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court by way of Plaintiff's Motion to Amend the Complaint. (ECF Nos. 43, 45). In accordance with Federal Rule of Civil Procedure 78, the Court did not hear oral argument on Plaintiff's application. Upon careful consideration of the parties' submissions, and for the reasons stated below, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**.

I. **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**[1]

In this matter, Plaintiff Alfred Smith alleges that he was wrongfully arrested, prosecuted, convicted, and then incarcerated for several years based on an eyewitness identification that the defendant police officers obtained by orchestrating an unlawfully suggestive "show-up", and despite the lack of any other evidence linking Plaintiff to the crime, and the fact that Plaintiff's physical appearance differed significantly from the victim's descriptions of her assailant. (See generally Am. Compl., ECF No. 16).

---

[1] Unless otherwise noted, the Court has drawn the facts described herein from Plaintiff's Amended Complaint. (ECF No. 16).

Plaintiff alleges that, on July 10, 2009, a woman "called the Plainfield Police Department and claimed that she had been forcibly robbed on a dimly lit street in Plainfield, New Jersey." (Am. Compl. "Facts Common to All Counts", ¶ 1, ECF No. 16). The victim informed police that the robbery lasted as long as ten minutes, and described the perpetrator as "a 'Black Male', wearing a black shirt, a brown windbreaker, about six feet tall with a scar on his mouth". (Id. ¶ 2). Later, when discussing the robbery with Defendant Officer Edward Jackson, she described her assailant as a "'tall black male in jeans and a dark shirt.'" (Id. ¶ 3). Defendant Officer Charles Martina arrested Plaintiff and relayed that information to Defendant Officer Jackson, who informed the victim "that her assailant had been caught and that they needed her to positively identify him". (Id. ¶¶ 4-5). Defendant Jackson then drove the victim to the park where Defendant Officer Martina had detained Plaintiff, and the officers conducted a "show-up" where Plaintiff "was standing between two police officers." (Id. ¶¶ 6-7). The victim identified Plaintiff as the perpetrator while sitting in the back seat of Officer Jackson's vehicle. (Id. ¶ 8). The "show-up" occurred in the dark after 10:00 p.m. (Id. ¶ 7). After her identification, the victim provided the Plainfield Police Department with the following written description of her assailant: "Afro-American. 6 feet – 5'8'', brown shirt, cap, black pants." (Id. ¶ 9). Plaintiff alleges that the Defendant Officers arrested him despite the fact that he did not match the victim's descriptions, he did not have any evidence of the crime on his person, and the victim made her identification after a fundamentally tainted "show-up." (See generally id.).

Plaintiff was subsequently convicted on January 26, 2012, and thereafter remained in prison until after the New Jersey Superior Court, Appellate Division suppressed the evidence of the victim's identification at the "show-up" discussed above (finding that the identification process was improper and that the prosecution's use of that evidence at trial violated Plaintiff's due process

rights) and overturned his conviction. (Id., "Ninth Count" ¶ 9). With that evidence excluded, the prosecutors ultimately declined to retry the case, and Plaintiff was released from custody. (Id. ¶¶ 9, 11 ). Plaintiff alleges that, as a result of Defendants' conduct, he remained incarcerated from the date of his arrest, July 10, 2009, through September 18, 2014. (Id. ¶ 9).

Plaintiff commenced this matter on July 27, 2016 by filing a Complaint in the Superior Court of New Jersey. (See Compl., ECF No. 1-1). Defendants New Jersey Department of the Treasury, Union County Prosecutor's Office, and Peter Benza removed the case to the United States District Court on September 2, 2016. (ECF No. 1). Those Defendants then moved to dismiss the Complaint, (ECF No. 6), and Plaintiff later moved for leave to amend his pleading. (ECF No. 13). By Order dated October 31, 2016, and in an effort to obviate potentially unnecessary dispositive motion practice, this Court permitted Plaintiff to amend his pleading. (ECF No. 15).

Plaintiff filed an Amended Complaint (labeled "Verified Complaint and Jury Demand") on November 18, 2016. (ECF No. 16). In that pleading, Plaintiff asserted claims for "wrongful and malicious prosecution" (First Count), violation of his due process rights (Second Count); racial discrimination in violation of the Fourth and Fourteenth Amendments, as well as 42 U.S.C. § 1981 (Third Count), deliberately indifferent policies, practices, customs, training and supervision in violation of the Fourth and Fourteenth Amendments, as well as 42 U.S.C. § 1981 (Fourth Count), intentional infliction of emotional distress (Fifth Count), abuse of process (Sixth Count), negligence (Seventh Count), and violation of the New Jersey Civil Rights Act (Eighth Count), as well as a claim under the New Jersey Mistaken Imprisonment Act (Ninth Count), and a wrongful imprisonment claim (Tenth Count). (See generally, Am. Compl., ECF No. 16). Plaintiff sought relief against Officers Martina and Jackson, the City of Plainfield, the Plainfield Police

Department, the Union County Prosecutor's Office, Union County Prosecutor Peter Benza, and the New Jersey Department of the Treasury. (Id.). Defendants thereafter moved to dismiss the Amended Complaint. (ECF Nos. 17, 18). By Order dated July 11, 2017, the Hon. Esther Salas, U.S.D.J. administratively terminated the motions to dismiss, so as to afford the parties an opportunity to participate in a settlement conference with the undersigned. (ECF No. 31). When efforts to settle this matter proved unsuccessful, Judge Salas reinstated the motions to dismiss by Order dated October 10, 2017. (ECF No. 38).

By letter dated October 23, 2017, Plaintiff's counsel advised that certain of the claims in Plaintiff's Amended Complaint were premised on anticipated changes in the governing case law, and that those changes never came to fruition. (See Oct. 23, 2017 Letter at 2, ECF No. 39). Counsel therefore proposed amending Plaintiff's pleading to remove those causes of action, and provide focused factual allegations in support of Plaintiff's remaining claims. (Id.).[2] Defendants Jackson and Martina opposed that request by letter dated October 24, 2017, arguing that further amendment would "only continue to delay this litigation and force Defendants to file yet another Motion to dismiss." (Oct. 24, 2017 Letter at 2, ECF No. 40). Those Defendants proposed that Plaintiff instead simply dismiss any claims that no longer appeared tenable. (Id.). This Court conducted a telephone conference on the issue on October 27, 2017, and subsequently instructed Plaintiff to file a motion seeking leave to amend. (ECF No. 42).

Plaintiff filed his motion for leave to amend on November 7, 2017. (ECF No. 43).[3] In his Proposed Second Amended Complaint ("PSAC"), Plaintiff seeks to assert the following causes of

---

[2] Counsel argued that an amendment would be more practical than simply dismissing certain claims, as Plaintiff's Amended Complaint included "a large focus" on facts supporting those now defunct claims.

[3] Plaintiff did not initially include "a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading which it proposes to amend", as required pursuant to Local

4

action: a claim under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment rights in connection with the July 10, 2009 "show-up" (First Count); a claim under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment rights in connection with Defendants' allegedly malicious prosecution (Second Count); a racial discrimination claim under 42 U.S.C. §§ 1981 and 1983 (Third Count); a "supervisor liability" claim under 42 U.S.C. § 1983 (Fourth Count); a Monell claim against the City of Plainfield under 42 U.S.C. § 1983 (Fifth Count); a claim under the New Jersey Civil Rights Act (Sixth Count); a claim against the State of New Jersey under the New Jersey Mistaken Imprisonment Act (Seventh Count); and a common law claim for malicious prosecution (Eighth Count). (See generally PSAC, ECF No. 43-1). Plaintiff has removed his claims against the Plainfield Police Department, the Union County Prosecutor's Office, and Peter Benza. (See generally id.). Plaintiff has also eliminated his claims for intentional infliction of emotional distress, negligence, and abuse of process. (Id.). Defendants Jackson, Martina, City of Plainfield and Plainfield Police Department opposed Plaintiff's motion, which is now fully briefed and ripe for resolution. (ECF Nos. 46, 47).

## II. DISCUSSION

### a. Standard Applicable on Motions for Leave to Amend Under Rule 15

Federal Rule of Civil Procedure 15(a) governs a party's request for leave to amend a complaint and states, in pertinent part, that a party may amend its complaint after obtaining the Court's leave. Fed. R. Civ. P. 15 (a)(2); see also Rivera v. Valley Hospital, Inc., No. 15-5704 (JLL), 2017 WL 916436 at *2 (D. N.J. March, 08 2017) (quoting Wright & Miller § 1484, at 676).

---

Civil Rule 15.1(a)(2). The Court therefore directed Plaintiff to file a redlined version of his proposed amended pleading. (ECF No. 44). Plaintiff instead filed an entirely new motion for leave to amend. (ECF No. 45). The Court will treat Plaintiff's two submissions, (ECF Nos. 43, 45), as a single motion for leave to amend.

5

The Rule directs that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15 (a)(2). This standard ensures that claims are decided on their merits rather than on mere technicalities. See Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (citing Wright, Miller and Kane, Federal Practice and Procedure, Vol. 6 § 1471 at 505 (2d ed. 1990)).

While District Courts are vested with the broad discretion to grant or deny a motion for leave to amend under Rule 15(a), Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993) (noting "the grant or denial of leave to amend is a matter committed to the sound discretion of the district court"), they must exercise that discretion in light of "Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." Voilas et al. v. General Motors Corp., et al., 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted); Foman v. Davis, 371 U.S. 178, 182 (1962) (finding "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion"). The United States Court of Appeals for the Third Circuit has interpreted that mandate as requiring that the District Court grant leave to amend in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive. Grayson v. Mayview State Hosp., 293 F.3d 103, 107-08 (3d Cir. 2002); see also Arthur v. Maersk, Inc., 434 F. 3d 196, 204 (3d Cir. 2006) (stating that, generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust.").

Defendants do not argue that Plaintiff unduly delayed seeking amendment, that Plaintiff's proposed amendments would cause any unfair prejudice, or that Plaintiff is acting in bad faith. (See generally, Def. Br., ECF No. 46). Nor does it appear, from the Court's review of the docket for this matter, that such arguments might serve as a valid basis for denying Plaintiff's motion. The Court will therefore focus its analysis on Defendants' futility arguments.

b. **Futility Analysis**

A proposed amendment "is futile if the amended complaint would not survive a motion to dismiss." County of Hudson v. Janiszewski, 351 F. App'x 662, 666 (3d Cir. 2009) (quoting Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000)); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'") (internal citation omitted). Therefore, "[t]he futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC, No. 11-7119 (WJM), 2014 U.S. Dist. LEXIS 46572, *9-10 (D.N.J. Apr. 4, 2014); In re Burlington Coat Factory Sec. Litig., 114 F. 3d 1410, 1434 (3d Cir. 1997); Allah v. Bartkowski, No. 11-3153(MAS), 2017 U.S. Dist. LEXIS 74826, *6 (D. N.J. May, 17 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court notes that Defendants bear the burden of establishing that Plaintiff's proposed amendment is futile, and that, "given the liberal standard applied to the amendment of pleadings," that burden is a "heavy" one. Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F. Supp. 2d 761, 764 (D.N.J. 2000); accord Marjam, 2014 U.S. Dist. LEXIS 46572 at *10. "Therefore, '[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper.'" Schiano v. MBNA, No. 05-1771 (JLL), 2013 U.S. Dist. LEXIS 81440, *44 (D.N.J. Feb. 11, 2013) (quoting 6 Wright, Miller & Kane, Federal Practice and Procedure § 1487 (3d ed. 2012)). The Court will evaluate Defendants' futility arguments under these standards.

i. **Statute of Limitations Arguments**

Defendants first argue that Plaintiff's proposed amendment would be futile, as the claims set forth in Counts One, Three, Four, Five and Six of Plaintiff's PSAC are time-barred. (Def. Br. at 9-13, ECF No 46). This Court disagrees.

Counts One, Four and Five seek relief pursuant to 42 U.S.C. § 1983 in connection with Defendants' alleged violations of Plaintiff's Fourteenth Amendment rights. (See generally, PSAC, ECF No. 43-1). "It is well established that the statute of limitations for any § 1983 claim is defined by the state statute which limits actions for personal injuries. 'In New Jersey that statute is N.J.S.A. 2A:14-2, which provides that an action for an injury to the person caused by a wrongful act, neglect, or default, must be convened within two years of accrual of the cause of action.'" Mullen v. Port Auth., 100 F. Supp. 2d 249, 260 (D.N.J. 1999) (internal citations omitted).[4] Moreover, "[u]nder federal law, a § 1983 cause of action begins to accrue when the plaintiff knows, or has reason to know, of the injury on which the action is based." Id. Defendants argue, without citation, that Plaintiff's §1983 claims accrued either at the time of his arrest (July 10, 2009) or, alternatively, at the time of his sentencing (May 25, 2012), and are therefore time-barred because Plaintiff did not file his original Complaint until October 1, 2015.[5] (Def. Br. at 10-11, ECF No. 46).

---

[4] The parties agree that Plaintiff's § 1983 claims are subject to a two-year limitations period. (Compare Def. Br at 9-10, ECF No 46, with Pl. Reply at 10, ECF No. 47).

[5] This date requires some explanation, as it predates the instant case by nearly a year. On October 1, 2015, Plaintiff commenced Smith v. City of Plainfield, et al., Civil Action No. 15-7258 (ES)(MAH) alleging essentially the same facts at issue in this case. By Order dated August 15, 2016, Judge Salas dismissed Plaintiff's claims against the Plainfield City Police Department with prejudice, and dismissed the remainder of Plaintiff's claims "*without prejudice* to Plaintiff's right to re-file those claims in the Superior Court of New Jersey." (ECF No. 32 in Civil Action No. 15-7258) (emphasis in original). On July 27, 2016, Plaintiff commenced this action by filing a Complaint and Jury Demand in the Superior Court of New Jersey, and Defendants removed the matter to the United States District Court on September 2, 2016. (See Notice of Removal, ECF No. 1).

Defendants' position, however, appears to contradict the guidance that the United States Supreme Court provided in Heck v. Humphrey, 512 U.S. 477 (1994).

In Heck, the Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. **A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.** Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486-87 (emphasis added). As Plaintiff's § 1983 claims were "not cognizable" until the Superior Court of New Jersey, Appellate Division, overturned his conviction on July 29, 2014, (PSAC, "Facts Common To All Counts" ¶ 20, ECF No. 43-1), they did not accrue until that date. As the limitations period for those claims did not expire until July 29, 2016, they are not time-barred.[6]

The Court finds that the same logic applies to Plaintiff's "Racial Discrimination" claim (Count Three) and his related claim under the New Jersey Civil Rights Act (Count Six). The bulk of Count Three is, at its heart, another § 1983 claim premised on the same underlying conduct as Counts One, Four and Five, and Plaintiff has simply added that Defendants' alleged conduct was racially motivated. (PSAC, "Third Count", ECF No. 43-1). In Count Six, Plaintiff seeks relief

---

[6] This is true whether the Court uses the October 1, 2015 filing date in Civil Action No. 15-7258, or the July 27, 2016 filing date in this action.

under New Jersey statutory law regarding the same alleged conduct. (Id. at Sixth Count). Like Counts One, Four, and Five, it appears that the claims at issue in Counts Three and Six are also predicated on the show-up underlying Plaintiff's arrest (more precisely, the Appellate Division's determination regarding the impermissibility of that show-up) and, in turn, necessarily accrued at the same time as the other claims. The Court therefore declines to find that Counts Three and Six are time-barred.

The Court must, however, separately address Plaintiff's purported claim under 42 U.S.C. § 1981. Defendants argue that § 1981 is inapplicable in this case and that Plaintiff's amendment is futile to the extent Plaintiff seeks to include such a claim. (Def. Br. at 11, n.1, ECF No. 46). Plaintiff did not oppose that argument in his Reply submission. (See generally Pl. Reply, ECF No. 47). This Court agrees that Plaintiff has not articulated a viable basis for his § 1981 claim. As one Court in this District has observed: "To establish a cause of action under Section 1981, plaintiffs must demonstrate that (1) they are members of a racial minority; (2) defendants intended to discriminate on the basis of race; and (3) discrimination concerned a statutorily enumerated activity, such as the rights to make and enforce contracts or to purchase property." Hickson v. Marina Assocs., 743 F. Supp. 2d 362, 376 (D.N.J. 2010). Here, Plaintiff has not alleged that Defendants' alleged discrimination pertained to any of the activities enumerated in § 1981, (see PSAC, "Count Three", ECF No. 43-1), and Plaintiff has therefore failed to state a valid claim under that statute.

### ii. **Qualified Immunity Argument**

Defendants argue that Officer Jackson and Officer Martina are entitled to qualified immunity, and that Plaintiff's claims against those defendants therefore fail as a matter of law. (Def. Br. at 13-20, ECF No 46). "'The doctrine of qualified immunity protects government

10

officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Montanez v. Thompson, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting Pearson v. Callahan, 129 S.Ct. 808, 815, 172 L. Ed. 2d 565 (2009)) (internal quotations and citation omitted). "Qualified immunity applies regardless of whether the government official's conduct results from a mistake of law, mistake of fact, or mistake based on mixed questions of law and fact." Id. at 250 (quoting Pearson, 129 S.Ct. at 815).

The determination of whether an officer is entitled to qualified immunity requires the Court to conduct a two-step inquiry:

> "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

Id. (quoting Pearson, 129 S.Ct. at 815-16). To find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Put another way, "a right is clearly established for the purposes of qualified immunity when its contours are sufficiently clear that a reasonable official would understand that what he [/she] is doing violates that right." Hubbard v. Taylor, 538 F.3d 229, 236 (3d Cir.2008) (quoting Williams v. Bitner, 455 F.3d 186, 191 (3d Cir.2006) (internal quotations omitted); accord Saucier v. Katz, 533 U.S. 194, 200 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.")

Finally, the Court recognizes that "[q]ualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier, 533 U.S. at 200 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. Pearson v. Callahan, 555 U.S. 223, 231 (2009). As such, federal courts have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Accordingly, Courts have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. Hunter v. Bryant, 502 U.S. 224, 227.

Here, Defendants do not dispute that Plaintiff has alleged a violation of his constitutional rights. (Def. Br. at 13-20, ECF No. 46). Indeed, even a cursory review of Plaintiff's Second Amended Complaint reflects that Plaintiff has alleged violations of long-settled Fourth and Fourteenth Amendment rights. Rather, Defendants focus their argument on the second prong of the qualified immunity test, contending that they had probable cause to arrest Plaintiff after the victim's positive identification, and therefore acted reasonably and lawfully under the circumstances. (Id.). In making that argument, Defendants rely heavily on the New Jersey Superior Court, Appellate Division's decision in Bayer v. Township of Union, 414 N.J Super. 238 (N.J. App. Div. 2010).

In Bayer, the plaintiff "was arrested for a bank robbery he did not commit, based on a bank teller's misidentification of him at a showup conducted . . . shortly after the crime." Id. at 247. Police detained the plaintiff, because his car matched an eyewitness' description of the

perpetrator's vehicle. Id. at 249. Officers then brought three witnesses, who had observed the perpetrator either during or around the time of the robbery, to the site of the plaintiff's arrest. Id. at 250. The witnesses were allowed to observe the plaintiff while he stood handcuffed in front of a police vehicle and alongside an officer. Id. One witness was unable to determine whether the plaintiff was the person who robbed the bank, while another was only able to conclude that the plaintiff was "possibly" the perpetrator. Id. at 251. The third witness, the bank teller directly involved in the robbery, immediately and emphatically identified the Plaintiff as the perpetrator, stating that, while his clothes were different, the teller "was sure it was him because he had the 'same face and those eyes.'" Id. That witness later wavered in her certainty, providing a formal written statement indicating that she was only "ninety percent sure that the suspect was the robber." Id.

Based largely on the teller's identification, Police signed a complaint warrant charging the plaintiff with second degree robbery. Id. at 252. Later the same day, after conducting additional investigation and noting certain inconsistencies, the police released the plaintiff from custody. Id. at 253. Several months later, after the plaintiff took a polygraph test, the prosecutor filed a notice of dismissal. Id. at 253-54. The plaintiff later filed a lawsuit asserting a cause of action for violation of his federal civil rights pursuant to 42 U.S.C. § 1983, as well as claims for false arrest and malicious prosecution. Id. at 254. The trial court granted summary judgment in favor of the individual police officers involved, and the plaintiff appealed. Id. at 255. In affirming the trial court's decision to grant summary judgment, the Appellate Division found that the teller's identification provided the police "with a reasonable basis for believing that probable cause existed when [an officer] signed the complaint [against the plaintiff]." Id. at 264. The Appellate Division clarified that "probable cause is determined at the time the police officer acts, and not on the basis

13

of twenty-twenty hindsight." Id. The Appellate Division also noted that, even if the show-up that the police used to obtain that identification was suggestive, "it was not extraordinarily so", and did not render the police officers' actions unreasonable. Id. at 268-69. The Bayer court explained that it reached that determination, in part, because the plaintiff did not allege that the officers used suggestive language when presenting him to the eyewitnesses. Id. at 268.

While there are several similarities between the operative facts of this case and those at issue in Bayer, there is at least one critical, fundamental difference. As discussed above, in Bayer, a bank teller misidentified the plaintiff as the bank robber in question during a show-up. Before police permitted the bank teller to view the suspect, however, an officer explained that the police "found somebody that matched the robber's description, and they wanted to see if [the teller] could recognize him." Id. at 251. The officer instructed the teller "that she should not feel obliged to identify anybody and that the suspect may or may not be the robber." Id. at 250. Here, in stark contrast to Bayer, Defendant Officer Jackson allegedly told the victim, explicitly and in no uncertain terms, that Plaintiff Alfred smith was her assailant (and that they "needed her to positively identify him") before conducting the show-up. (See PSAC, "Facts Common to All Counts", ¶ 8, ECF No. 43-1). The victim then proceeded to identify Plaintiff, despite the fact that his physical appearance allegedly differed significantly from her own previous descriptions of her assailant. Taking the allegations in the PSAC as true, at the time they decided to move forward with formally arresting and assisting in prosecuting Plaintiff, Defendants Martina and Jackson knew: (1) Plaintiff differed from the victim's multiple physical descriptions of her assailant in significant, unalterable ways (e.g., while the perpetrator had a noticeable scar around his mouth, Plaintiff was bearded and lacked such a scar; Plaintiff was 6'4", while the perpetrator was between 5'8" and 6'0"); (2) prior to the show-up, Officer Jackson explicitly told the victim that Plaintiff

14

was her assailant; and (3) the police never located any other evidence linking Plaintiff to the robbery.[7] These facts present a scenario that does not cry out for an immediate application of the qualified immunity doctrine. The Courts finds that it is at least plausible that no reasonable officer would have arrested Plaintiff against this factual backdrop. The Court therefore also finds that Plaintiff's claims against Officers Martina and Jackson should not be dismissed on qualified immunity grounds at this early stage of the case,[8] and rejects Defendants' futility arguments on this point.

### III. CONCLUSION

Based on the foregoing, the Court finds that, with the exception of Plaintiff's claim under 42 U.S.C. § 1981, Defendants have failed to establish that Plaintiff's proposed amendment is clearly futile. Plaintiff's motion for leave to amend, (ECF Nos. 43, 45), is therefore **GRANTED IN PART AND DENIED IN PART. On or before April 24, 2018,** Plaintiff shall file a Second Amended Complaint consistent with this Opinion. For the sake of clarity, Plaintiff must use continuous paragraph numbering, rather than restarting each section of his pleading with paragraph

---

[7] In their briefing, Defendants represent, without citation, that the robbery victim indicated that she was a "thousand percent sure" that Plaintiff was her assailant. (Def. Br. at 19, ECF No. 46). That information is not in the Complaint, and the basis for Defendants' representation is unclear. The victim's alleged commentary regarding the certainty of her identification is, therefore, not properly before the Court in the context of Plaintiff's motion. Harris v. Bristol-Myers Squibb Co., Civil Action No. 11-6004 (FLW), 2013 U.S. Dist. LEXIS 137335, at *14 (D.N.J. Sep. 25, 2013) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1992)) ("When evaluating an objection based upon futility, the Court may only consider the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the claims are based on those documents.").

[8] The Court notes that, in Bayer, the trial court resolved the defendant officers' entitlement to qualified immunity at the summary judgment phase, with the benefit of an appropriate factual record. Bayer, 414 N.J Super. at 247, 254-56.

"1". An appropriate form of Order accompanies this Opinion.

　　　　　　　　　　　　　　　　　　　　／s／ Joseph A. Dickson
　　　　　　　　　　　　　　　　　　　　JOSEPH A. DICKSON, U.S.M.J.
　　　　　　　　　　　　　　　　　　　　4/17/18

cc:　　Hon. Jose L. Linares, C.J.