## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SHEBELL & SHEBELL, LLC
John H. Sanders, II, Esq. (036932001)
655 Shrewsbury Avenue, Suite 314
Shrewsbury, New Jersey 07702
Attorneys for Plaintiff(s)
(732) 663-1122
Our File No.:  48666 (JHS/lmp)

| | |
|---|---|
| ALFRED SMITH,<br><br>      Plaintiff,<br><br>   v.<br><br>THE CITY OF PLAINFIELD, POLICE OFFICER EDWARD JACKSON, POLICE OFFICER CHARLES MARTINA, THE STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF THE TREASURY, JOHN and JANE DOES (1-100)<br><br>     Defendants. | Civil Case No.: 16-5355 (ES)(JAD)<br><br><br><br>**<u>Civil Action</u>**<br><br>**SECOND AMENDED COMPLAINT AND  JURY DEMAND** |

Plaintiff, Alfred Smith, by and through his attorneys, the Law Firm of Shebell & Shebell, L.L.C., states as follows:

### <u>JURISDICTION</u>

This case was removed to the Federal Court by the Defendants following the filing of a State Court Complaint on September 1, 2016 on the basis of federal question jurisdiction pursuant to 28 U.S.C. section 1331 and 1441 (a).

1

**INTRODUCTION**

1.  Alfred Smith was denied a fair trial and his constitutional rights to due process.

2.  He was stopped, arrested, subjected to an unlawful suggestive identification, subjected to a malicious and unconstitutional prosecution, convicted and spent five years suffering in jail and state prison for an assault and robbery of a woman in Plainfield, a heinous crime which he did not commit.  This gross miscarriage of justice and unfair and unconstitutional violation of his due process rights and denial of a fair trial was brought about by the egregious misconduct of law enforcement officers who improperly stopped and arrested him based upon his race, which is African-American, fabricated evidence by having him identified through improper and suggestive police identification procedures, presented evidence which it knew or should have known was incorrect, improper, fabricated or obtained though coercion through a wrongful prosecution, and presented the evidence at an unfair trial which denied his due process rights and resulted in an improper conviction, and despite that there was a complete lack of actual evidence connecting him to the crime.    Indeed, the officers manufactured a false identification, then presented that identification at a trial resulting in a conviction of a completely innocent person.

3.  Plaintiff, Alfred Smith, maintained his innocence at trial and continued to fight to prove his innocence throughout his incarceration.   Finally, after years of incarceration, in 2014 the New Jersey Appellate Division reversed the conviction, finding that he was denied a fair trial and that an improper identification that was introduced at trial by the testifying City of Plainfield police officers violated his due process because it was egregiously suggestive.  The City of Plainfield's officers had relied completely upon the suggestive identification which fabricated the positive identification of Smith as the perpetrator of the crime.   They collected no other

evidence, performed no other investigation and did nothing to find any other suspects, despite

that there was a complete lack of evidence that Mr. Smith had interacted with the victim and that

did not match any description of the perpetrator other than that he was African-American.

Therefore, the case was dismissed and Mr. Smith was finally freed.

4.    Beyond compensating Alfred Smith, for the years that he spent in prison and his

continuing suffering, this action seeks to remedy the unlawful City of Plainfield policies,

practices, or customs of conducting unlawful interrogations, unlawful and egregiously suggestive

police identification procedures intended to fabricate evidence, unlawful stop and arrests,

presentation of false evidence through trial testimony and/or failing to adequately train, supervise

and discipline police officers and that led defendants to violate his constitutional rights as

guaranteed by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution,

and the laws of the State of New Jersey.

## THE PARTIES

5.    Plaintiff, Alfred Smith, is currently and was at all times material to this Complaint

a resident of the State of New Jersey.

6.    Defendant, Officer Edward Jackson, and Defendant, Officer Charles Martina,  are

or were members of the Plainfield Police Department.  They are each sued individually and in

their official capacity.  The criminal trial of Plaintiff, Alfred Smith, was the first criminal trial for

Assistant Prosecutor, Peter Benza, within the Union County Prosecutor's Office.  Officer

Edward Jackson, and/or Defendant, Officer Charles Martina of the City of Plainfield had

previously testified at numerous trials.  At trial, they testified consistently with the policis,

practices and customs of the City of Plainfield. At all times relevant to this Complaint, they were

3

duly appointed and acting police officers of the Plainfield Police Department, acting under color of law pursuant to the policies, practices, customs and usage of the City of Plainfield.

7.      Defendant(s), John Doe(s), 1-10, fictitious Defendant(s), whose identities are currently unknown, represent those employees of the Plainfield Police Department, acting under color of law, pursuant to the statutes, ordinances, regulations, policies, customs and/or usage of the City of Plainfield and the State of New Jersey, who had supervisory authority over Defendant, Officer Edward Jackson, and/or Defendant, Officer Charles Martina, jointly, individually and severally,  that participated in the investigation and prosecution that lead to Plaintiff,  Alfred Smith's wrongful conviction or to the supervision and/or had active engagement in behavior which violated the Constitution and statutes of the United States and the State of New Jersey with respect to the conduct of Defendant, Officer Edward Jackson, and/or Defendant, Officer Charles Martina, jointly, individually and/or severally, who encouraged and condoned violations of the Constitution and statutes of the United States and the State of New Jersey and/or who failed as supervisors to establish a system to prevent violations of the Constitution and statutes of the United States and the State of New Jersey, which failure resulted in or was likely to lead to the violation of the Constitution and statutes of the United States and the State of New Jersey, and/or failed to properly and adequately train officers who had police powers for the City of Plainfield, State of New Jersey, or any other entity, which resulted in or was likely to lead to violations of the Constitution and statutes of the United States and the State of New Jersey.  They are each sued individually and in their official capacity.

8.      The City of Plainfield is a city duly incorporated in the County of Union, in the State of New Jersey, which at all times had a duty to provide training, supervision and/or overall management of the City of Plainfield Police Officers.

9.      Defendant, John Doe Supervising Officer(s), 1-9, fictitious Defendant(s), were at all times relevant hereto officers in the Plainfield Police Department responsible for upholding and enforcing the law and maintaining the peace in the City of Plainfield and were also responsible for supervising and training subordinate officers and were also responsible for creating and implementing policy statements, ordinances, regulations, official decisions and well settled customs and practices. They are sued individually and in their official capacity.

10.     The State of New Jersey, Department of the Treasury is the State entity within the State of New Jersey that is designated by statute as the entity to direct claims brought under the New Jersey Mistaken Imprisonment Act, N.J.S.A. 52:4C-1 to -6 (1997), amended by L. 2013, c. 171, 1.2.

11.     The City of Plainfield is a body politic and corporate empowered to exercise home rule. The City of Plainfield has a duly designated policymaking entity for the City under N.J.S.A. 40A:14 et. seq. The Plainfield Police department is a duly designated law enforcement agency organized under N.J.S.A 40A:14 et. seq.

## FACTS COMMON TO ALL COUNTS

12.     In 2009, Alfred Smith was forty-eight years old. He was living at the Plainfield YMCA on a cot and struggling to find work. All of his possessions and everything he owned was in his small living space at the YMCA.

13.     Late in the day on Friday, July 10, 2009, Al Smith and two of his friends met in a local park, College Park, in Plainfield for an informal celebration of his birthday, which was a few days earlier. They stayed until after sundown.

14.     Meanwhile, approximately half a mile away a woman that Alfred Smith had never met in his life named Josephine DiMeglio, called the Plainfield Police Department and claimed that she had been forcibly robbed on a dark street in Plainfield, New Jersey over half a mile away from where Mr. Smith was with his friends.

15.     The original description given by DiMeglio to the 911 operator over her assailant was of a "Black Male, wearing a black shirt, a brown windbreaker, about six feet tall with a scar on his mouth".  DiMeglio has also described the robbery as lasting for as long as ten minutes.

16.     When the Plainfield Police Department arrived to the call from DiMeglio, Defendant, Officer Edward Jackson was given a substantially different and utterly vague description of the assailant by her, namely a "tall black male in jeans and a dark shirt".  On any given day in Plainfield, this description would match thousands of City residents.  Rather than seek additional information, Plainfield police officers found Alfred Smith in the park with this friends.

17.     Defendant Plainfield Police Officer Charles Martina entered College Park as part of canvassing the area for a black male in Plainfield.  He saw Mr. Smith in the northeast corner of the park standing next to a bench with his friends where he had been for hours.  Mr. Smith was not wearing the clothing described by DiMeglio, did nothing to flee, had none of the property claimed to have been stolen, and showed no signs that he had been sprinting from the scene of the alleged ten minute struggle.  No physical evidence whatsoever was obtained by Defendant Martina.

18.     Despite that Plaintiff, Alfred Smith, did not match the description given in the call or in person by DiMeglio, other than by being black and a man, and despite there being was no evidence or indication that he had been involved in the incident with DiMeglio, he was arrested by the Plainfield Police Officer Defendant, Charles Martina.  Martina called in the arrest back to Defendant Officer, Jackson, who was still with Dimeglio.

19.     DiMeglio later testified that she was told by Defendant, Officer Jackson, that her assailant had been caught and that they needed her to positively identify him, "They told me they apprehended him and he was across the street in the park…"

20.     DiMeglio was driven by Defendant Officer Jackson to the park.  She rode in the back of Defendant Officer Jackson's police cruiser.

21.     When DiMeglio arrived at the park in the dark at after 10 o'clock p.m., for the "show-up" identification, Mr. Smith had been detained and was standing between two officers, Defendant Officer Martina and another officer, beside a police car.

22.     At the instruction of Defendant Officer Jackson, DiMeglio was permitted, under those circumstances, to make an identification from the back seat of the police cruiser, without ever even exiting the vehicle or even rolling down the car window.  Predictably, given the suggestive nature of the show-up including the cross racial identification, DiMeglio – a white female - misidentified Plaintiff Smith – a black man - who was completely innocent and matched none of the other descriptions that she had given of her assailant.

23.     DiMeglio's uncertainty regarding this identification was illustrated by her written description given at the Plainfield Police Department, even after the "show-up" identification. Dimeglio now described her assailant as an "Afro-American.  6 feet – 5'8", brown shirt, cap, black pants." Nevertheless, both Plainfield Police Officers proceeded with the arrest and prosecution of 6'4" Mr. Smith.

24.     While Plaintiff Smith had been taken into custody by Defendant Officer Martina, he had now been subjected to an ongoing prosecution arrested any actual description matching his clothing, identifying his shaven head or beard, or his height.

25.     Mr. Smith, was charged and, because he was living in poverty, could not make bail.  The prosecution of Smith by the Plainfield officers continued.

26.     The indictment of Mr. Smith took place on December 9, 2009.  The testifying officer, Detective Michael Lucky, who was also an employee of the City of Plainfield, provided information to the grand jury, largely based upon the improper identification procedure followed by Detective Martina.  Following the practices of the Plainfield Police Department Lucky completely failed to disclose the highly suggestive nature of the misidentification that had been obtained by Defendants Martina and Jackson, continuing the wrongful and malicious prosecution of Mr. Smith, who was indicted by the grand jury.

27.     Mr. Smith's *Wade* hearing concerning the identification did not take place until November 17, 2010, a year and a half after the arrest.   For that year and a half, he spent his entire life living in the Union County Jail awaiting trial.  The little that he owned was completely lost.  Everything was taken away from him, including his freedom.

28.     At the *Wade* hearing, DiMeglio gave yet another varying description of her

assailant, describing him as having hair on his head (Mr. Smith was bald), a scar on his mouth

(Mr. Smith had a beard), and reducing her description of his clothing to "something black and

something brown".  The defense moved to suppress the unconsitituional identification, alleging

that it was fabricated by a suggestive identification conducted by the City of Plainfield's police

officers.   The Court denied the defense's motion to suppress the identification, and it was

admitted into evidence at trial.  Officers Martina and Jackson testified at the *Wade* hearing at

length, describing the disturbing and suggestive identification procedure and manner of arresting

Mr. Smith, further indicating that they actively instigated, initiated and perpetuated the

prosecution of Mr. Smith, by providing testimony and reports which were used during the Grand

Jury for indictment, during the *Wade* hearing and eventually at trial, as to the false identification,

the most significant and only evidence supporting probable cause and conviction.

29.     The trial took place on January 24, 25, and 26, 2012.  Utilizing the egregiously

suggestive "show-up" identification, the City of Plainfield Police officers Defendant Martina

and/or Defendant Jackson intentionally presented their own testimony exploiting the

suggestiveness of the impermissible "show-up" identification and/or presenting the willfully

fabricated identification evidence in order to unconstitutionally deny Mr. Smith his right to a fair

trial and to secure themselves a criminal conviction based upon that improper and illegal

evidence.

30.     Mr. Smith was convicted on January 26, 2012.  He was found guilty of second

degree robbery and third degree hindering apprehension for giving his brother's name when he

was arrested.  He was sentenced to a ten year term, subject to the eighty-five percent period of

parole ineligibility and a concurrent five year term on the hinderning charge.

31.     Almost five years passed from the date Mr. Smith was first taken into custody and faced prosecution.  Then, finally, on July 29, 2014, the New Jersey Appellate Division ruled on Mr. Smith's appeal from hi sconvictio in State v. Smith, 436 N.J.Super. 556 (App. Div. 2014). The decision overturned his conviction on the basis that his Constitutional Due Process rights to a fair trial were violated by the use of the highly suggestive out-of-court identification, finding specifically that "the only consistent descriptive features given of the man who stole her [DiMeglio's] purse was that he was 'tall' and 'black'."   Mr. Smith's conviction was vacated, and the identification, the only piece of evidence upon which the police officers had based the case, was suppressed.  The Appellate Division also noted that Officer Martina, who had been trained regarding in-court testimony by the City of Plainfield regarding its policies, practices and customs for trial testimony, had improperly testified as to his impermissible lay opinion that the reason that Mr. Smith did not have any physical evidence of the robbery on his person because suspects "normally get rid of [the [proceeds of a crime] so they can't be tied to the crime," which testimony was evidence of his wrongful intent in prosecuting Mr. Smith.  This testimony is further evidence of Martina's malicious intent in prosecuting and securing a conviction of Mr. Smith.

32.     There was no evidence in the case indicating that Mr. Smith had been guilty of any crime other than the suggestive identification, which was suppressed.  The City of Plainfield police officers had provided no other evidence in the case, the case was dismissed, and Mr. Smith was finally released back to the world.

33.     The only similarity between the Plaintiff and the man who committing the criminal activity is that he is an African-American man, and it was as a result of his inclusion in this group the Plainfield Police officers were motivated and/or part of a system within the City of Plainfield which discriminates against African-Americans as a matter of practice and policy and which discriminated against him because of his inclusion in this protected class, thereby to subject him to the wrongful process and malicious prosecution which resulted in his conviction.

34.     The unlawful and illegal prosecution of Plaintiff Smith continued from the time he was improperly apprehended in July 2009 until August 2014, when he was finally released. He was incarcerated for five horrific years of ongoing wrongful and malicious prosecution by the City of Plainfield's officers Martina and Jackson, despite that he had done nothing wrong.

35.     Moreover, the acts of the Defendants, including Jackson, Martina, and the City of Plainfield were a part of an ongoing policy and practice of these various violations of civil rights, and/or were a natural and foreseeable consequence of the disregard for the civil rights of individuals in Plainfield and being prosecuted by the City of Plainfield's police department, which had encouraged and condoned these civil rights violations and/or failed to establish a system to prevent them.

36.     As a result of this failure, civil right violations occurred in the investigation and/or prosecution of crimes by the City of Plainfield, including the violations of the Plaintiff as set forth herein, and/or civil rights violations were likely or certain to take place due to the nature of the policies in place at the City of Plainfield, the Plainfield Police Department and the Union County Prosecutor's Office.  Upon information and belief, there was a custom, policy, pattern and practice in the City of Plainfield, by and through its policymakers, as well as the individual supervisors in this case, beginning years before the unjust conviction of Mr. Smith and

11

continuing though his incarceration, of conditioning, encouraging, ratifying and acquiescing in the practice of conducting unconstitutional criminal investigations, including without limitation conducting unconstitutional identifications, the fabrication of evidence, failing to investigate alibi evidence, failure to properly obtain probable cause, and failing to adequately investigate serious crimes, such as an assault and robbery.

37.     Upon information and belief, the City of Plainfield, through its policy makers failed to adequately screen, supervise, and/or discipline officers concerning proper investigatory tequeniques, obtaining identifications, and evidence collection.

38.     Mr. Smith, who maintained his innocence from the time he was arrested through his entire prosecution, incarceration and every time thereafter, was clearly not guilty of the crime for which he was prosecuted from the time he was accused, arrested, impermissibly identified, tried and convicted, then incarcerated, left incarcerated after the Defendants knew that there was no evidence that he had committed a crime, nor would there ever be following the decision by the Appellate Divison confirming the violations of his civil rights in the prosecution of him by the Defendants and suffered financial losses and severe emotional distress, which has robbed him of years of his life, which will never be the same.

39.     Plaintiff provided notices pursuant to N.J.S.A. 59:1-1, et seq. within 90 days of his release from incarceration.  The Notice of claim set forth the information required by N.J.S.A. 59:9-2e. More than one hundred eighty (180) days passed since the filing of Notice of Claim and the Defendants did not approve the claim in whole or in part.

## DAMAGES

40.    This action seeks damages for the period from July 10, 2009, the date of the arrest

through the present.  The defendants' unlawful, intentional, willful, purseful, delibertly

indifferent, reckless, bad-faith and/or malicious acts, misdeeds and omissions caused Mr. Smith

to be falsely arrested, maliciously prosecuted, unfairly tried, wrongfully conficted and to serve

over 5 yeas in prison pending trial and after conviction.

41.    As a direct and proximate result of the acts of the defendants, the injuries and

damages sustained by Mr. Smith, arising from the deprivation of civil rights include: violation of

his clearly established righs under the Fourth, Fifth and Fourteenth amendments to the

constitution; personal injuries, pain and suffering; seere mental anguish; emotional distress;

extreme fear; economic damages including loss of income; infliction of physical illness and

injury resulting from his confinement; humiliation, indignities, and embarrassment,; degradation;

injury to reputation; permanent lose of natural psychological development; and restrictions on all

forms of personal freedom and physical liberty including but not limited to diet, sleep, personal

contac, educational opportunity, vocational opportunity, athletic opportunity, peronsal

fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment and

expression.  Futhermore, as a direct result of his unjust conviction and imprisonment, may of the

effects of these disabilities continue to plague Mr. Smith to this day.

42.    All of the alleged acts, misdeeds and omissions committed by the defendants

described herein for which liability is climed were done intentionally, willfully, purposefully,

knowingly, unlawfully, maliciously, wantonly, recklessly, and/or with bad faith and said

proscribed conduct of defendants meets all of the standards for the imposition of punitive

damages.

### *CLAIMS FOR RELIEF FEDERAL CLAIMS*

### FIRST COUNT

## 42 U.S.C. SEC 1983 FOURTEENTH AMENDMENT
## VIOLATION FOR FABRICATION OF INCULPATORY EVIDENCE AND  USE OF
## SUGGESTIVE "SHOW-UP" IDENTIFICATION

### A.  Fabricating False Inculpatory Evidence

43.     Mr. Smith hereby incorporates by reference all of the foregoing and futher alleges as follows:

44.     Defendants Martina, Jackson, and the City of Plainfield, all state actors, acting deliberately, recklessly, or intentionally and under color of law, fabricated a positive identification, including a statement from a victim indicating that the Mr. Smith had committed a crime, in police reports, and in testimony, pretrial and at trial, concerning the identity of the person who was the alleged assailant involved in a crime.

45.     As a direct and proximate result of the individual defendants' fabrication of the false inculpatory testimony, violating Mr. Smith's clearly established Fourteenth Amendment right to be free from unreasonable seizures, Mr. Smith was wrongfully convicted and suffered the injuries and damages described above.

### B. Use of Suggestive Identification

46.     Defendants Martina and Jackson, state actors, acting deliberately, recklessly, or intentionally and under color of law, conducted a highly suggestive "show-up" identification of the Plaintiff, Alfred Smith, indicating and/or suggesting to the person presented to perform the identification that Plaintiff Smith was the person that had committed criminal activity against her, despite that this was not true, that there was no evidence that he had, when in fact he had not

committed a crime, whereby his rights, privileges and immunities secured by the United States

Constitution, Federal Law, and the law of the State of New Jersey were deprived:

   a. Of his liberty and his rights to due process and equal protection by conducting an
      unduly suggestive "show up" identification of the Plaintiff, Alfred Smith;
   b. By subjecting the Plaintiff, Alfred Smith to a highly suggestive identification
      procedure which had a substantial likelihood of and resulted in irreparable
      misidentification which would deny him due process through the entire process
      through his conviction;
   c. By conspiring for the purpose of impeding and hindering the due course of justice
      with the intent to deny him his right to equal protection and due process under the
      law;
   d. By subjecting him to wrongful imprisonment and continued unlawful detention as a
      direct result of the deprivation of due process resulting from the irreparable
      misidentification;
   e. By refusing or neglecting to prevent deprivations and denials of his civil rights
      under the Fourth Amendment, Fifth Amendment, and the Fourteenth Amendments
      of the United State Constitution and also the New Jersey Constitution by causing the
      misidentification.

   47.     Defendant officers knew that Plaintiff, Alfred Smith did not match the description

of the person who the victim of a robbery crime and/or that the description provided by

Defendant Officer Jackson through victim Josephine DiMeglio's description of "a tall black

male, wearing blue jeans and a dark shirt" was impermissibly and illegally vague in that it would

have provided probable cause for the stop and arrest of a large portion of the population in

Plainfield, New Jersey where Plaintiff, Alfred Smith was arrested.  Although Plaintiff is a black

male, he was wearing a black hoodie and brown pants on that evening, was nevertheless was

stopped, arrested and/or questioned by Defendant Officer Martina, and then was detained, all

violating his Constitutional Rights.

48.     Defendants, in particular Defendant Officer Martina, knew that Plaintiff, Alfred Smith was not in possession of any evidence indicating that he had done anything illegal, nor any evidence indicating that he had committed the crime of robbery for which he was arrested and detained, but was held and subjected to an illegal identification procedure nevertheless.

49.     Defendant officers ignored Plaintiff, Alfred Smith's denial that he had done anything illegal and his denial that he was in any way connected to the robbery that was being investigated.  These defendants also ignored that he did not meet the description of the alleged assailant.   These defendants also ignored that he did not have any of the allegedly stolen items on his person.

50.     As a direct and proximate result of the individual defendants' unlawful suggestive identification, violating Mr. Smith's clearly established Fourteenth Amendment right to be free from unreasonable seizures, Mr. Smith was wrongfully convicted and suffered the injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against the Defendants, Officer Martina and Office Jackson, jointly and severally, for compensatory damages for pain, suffering, loss of enjoyment of life, statutory damages, punitive damages, interest, counsel fees, costs of suit and any other relief that the court deems just.

## SECOND COUNT

### 42 U.S.C. SEC 1983 FOURTEENTH AMENDMENT VIOLATION FOR MALICIOUS PROSECUTION

51.     Mr. Smith hereby incorporates by reference all of the foregoing and futher alleges as follows:

52.     Defendant Martina and Defendant Jackson acting deliberately, recklessly and under color of law, falsely arrested and imprisoned Mr. Smith, without probable cause or other legal justification, knowing that there was no physical or testimonial evidence connecting Mr. Smith with the crime, and that they had fabricated and used an impermissibly suggestive identification practice and procedure in police repors and in testimony, pretrial and at trial, connecting Mr. Smith to the crime, when in fact Mr. Smith was innocent of any crime.  Thus, there was not even arguable proable cause to arrest or prosecutoe Mr. Smith, and no reasonable officer would have believed probable cause existed.

53.     Defendants Martin and Jackson, state actors, acting under color of law, commenced and/or caused to be continued a criminal prosecutoion against Mr. Smith that was lacking in probable cause, instituted with malice, by disregarding the actual evidence indicating that Mr. Smith was not the person that had commited any crime, in particular the alleged crime against DiMeglio that they were investigating, fabricating a false identification by suggesting that Mr. Smith had committed the crime to the alleged victim, by failing to investigate the crime and disregarding evidence indicating that Mr. Smith was innocent and evidence indicting that they should continue looking for an actual suspect who had committed the crime, and the prosecution was ultimately terminated in Mr. Smith's favor when the New Jersey Appellate Divison ruled that the unconstitutionally suggestive identification should have been suppressed form the trial and there was no other evidence collected by the officers indicating that Mr. Smith was in any way involved with the incident, causing the charges to be dismissed against him and for him to be freed from prison.

54.     The actions of the defendant police officers violated Mr. Smith's clearly established rights uner the Fourth Amendment and the procedureal due process component of the Fourteenth Amendment, caused his wrongful conviction and the injuries and damages set forth above.

55.     In initiating and perpetuating the prosecution of the Plaintiff, the Defendant's acted primarily for a purpose other than succeeding on the actual merits of the claims, with actual hostility or ill will and as part of a larger scheme to act with willful and conscious disregard for the rights of the public and this Plaintiff.

56.     The procurement of a prosecution against the Plaintiff for the false allegation of was malicious, shocking and objectively unreasonable in light of all of the circumstances.

57.     The criminal proceedings terminated in the Plaintiff's favor.   The prosecutor dropped the charges without any compromise by the Plaintiff, reflecting a prosecutorial judgment that the cause could not be proven.

58.     The City of Plainfield, actively engaged in unconstitutional behavior by encouraging and condoning a system of conducting arrests that would and did violate the rights of the public, and/or failing to properly train employees regarding the rights of individuals under Fourth, Fifth, and Fourteenth amendments to the United States Constitution, and the Constitution and laws of the State of New Jersey, including the rights to due process in the course of a prosecution.

59.     The Defendants at all times acted with no entitlement to qualified or absolute immunity for the complained of action.

WHEREFORE, Plaintiff demands judgment against the Defendants, City of Plainfield, Officer Martina and Officer Jackson, jointly and severally, for compensatory damages for pain, suffering, loss of enjoyment of life, statutory damages, punitive damages, interest, counsel fees, costs of suit and any other relief that the court deems just.

### THIRD COUNT

### 42 U.S.C. SEC 1983 SUPERVISORY LIABILITY

60.     Mr. Smith hereby incorporates by refrence all of the foregoing and futher allegs as follows:

61.     John Doe(s), 1-10, fictitious Defendant(s), were supervisory police offices, all state actors, acting deliberately, recklessly and under color of law, at all times,supervisory personel with the Plainfield Police Departmetn with oversight responsibility for training, hiring, screening, instruction, supervision and discipline of Martina and Jackson, who deprived Mr. Smith of his constitutional rights.

62.     These supervisory defendants knew or should have know that defendant officers were conducting falsely arresting and maliciously prosecuting civilians, failing to investigate evidence pointing to other leads or suspects, fabricating and creating inculpatory evidence through the deprivation of due process of law to civilians.

63.     These supervisory defendants were personally involved in failing to take preventative and remedial measures to guard against such consitutial deprivations, such that Mr. Smith would not have been injured.  These supervisors knew or in the exercise of due diligence would have known that he conduct of the named and Joe doe defendants against Mr. Smith was likely to occur.

19

64.     The failure of the supervisory defendants to train, screen, supervise, and discipline the named individual defendants and John Does amounted to gross negligence, deliberate indifference or intentional misconduct which directly caused the injrueis and damages set forth above.

WHEREFORE, Plaintiff demands judgment against the Defendants, John Doe(s), 1-10, fictitious Defendant(s), for compensatory damages for pain, suffering, loss of enjoyment of life, statutory damages, punitive damages, interest, counsel fees, costs of suit and any other relief that the court deems just.

### FOURTH COUNT
### 42 U.S.C. SEC 1983: MONELL CLAIM FOR UNCONSTITUTIONAL OFFICIAL POLICY AND FAILURE TO SUPERVISE AND TRAIN

65.     Mr. Smith hereby incorporates by reference all of the foregoing and futher alleges as follows:

66.     The City of Plainfield, by and through its policymakers, failed to ensure through custom, policy and/or practice that officers would conduct constitutionally adequate investigations; never fabricate inculpatory evidence; never engage in suggestive identification proceedures; obtain probable cause to ensure that suspects would not be fasely arrested and maliciously prosecuted; and refrain from race based policing.

67.     The City of Plainfield, by and through its policymakers, had actual or constructive notice of such failures to train, supervise and provide police to its employees, and failed to provide training or supervision despite an obvious need that such training and supervision was required, where Defendants knew that it was foreseeable that detectives, officers and investigators would predictable confront these situations and as a result of the failure to train and supervise, constitutional violations would result.

20

68.     The City of Plainfield, by and through its policymakers, failed to adequately supervise, train or discipline their employees, though it was foreseeable that constitutional violations of the type suffered by Mr. Smith would be a predictable result of such failures.

69.     The City of Plainfield, by and through its policymakers, had in force and effect at the time of the conduct complained of, a policy, practice or custom of conducting constitutionally inadequate investigations, fabricating inculpatory evidence, conducting suggestive identifications in criminal investigations, failing to obtain probable cause to ensure that suspects would not be falsely arrested and maliciously prosecuted, providing testimony in court based on speculation and not on evidence and presenting false testimony.

70.     Such failures to supervise, train, discipline, and screen, and such inconsitutional munical customs, practices and/or policies, amounted to gross negligence, deliberate indifference or interntional misconduct, and were the moving force behind the Plaintiff's arrest, prosecution, and incarceration, and proximately and directly caused the injuries and damages set forth above.

WHEREFORE, Plaintiff demands judgment against the Defendant, City of Plainfield, for compensatory damages for pain, suffering, loss of enjoyment of life, statutory damages, punitive damages, interest, counsel fees, costs of suit and any other relief that the court deems just.

### STATE LAW CAUSES OF ACTION

### FIFTH COUNT
### NEW JERSEY CIVIL RIGHTS VIOLATION

71.     Mr. Smith hereby incorporates by reference all of the foregoing and futher alleges as follows:

72.     Defendant police officers Martina and Jackson, and the City of Plainfield are liable under the Civil Rights Act N.J.S.A. 10:6-2 et. seq. for damages caused by their subjection of Mr. Smith to the deprivation of substantive due process and other privileges secured by the constitution of the United States as well as substantive rights, privilages or immunities secured by the Constitution of the State of New Jersey, by improperly fabricating evidence and conducting a suggestive identification and initiating and continuing the prosecution of Mr. Smith though trial and conviction, causing the denial of due process and the denial of a fair trial.

73.     As a direct and proximate result, plaintiff suffered the injuries and damges set forth above.

WHEREFORE, Plaintiff demands judgment against the Defendants, Officer Martina, Officer Jackson, and The City of Plainfield, for compensatory damages for pain, suffering, loss of enjoyment of life, statutory damages, punitive damages, interest, counsel fees, costs of suit and any other relief that the court deems just.

## SIXTH COUNT
### NEW JERSEY MISTAKEN IMPRISONMENT ACT, N.J.S.A. 52:4C-1, ET. SEQ., AS TO THE STATE OF NEW JERSEY AND DEPARTMENT OF THE TREASURY

74.     Plaintiff restates the information in the foregoing paragraphs and fully incorporates same into this count as if stated fully herein.

75.     Pursuant to N.J.S.A. 52:4C-2, the State of New Jersey and New Jersey Department of the Treasury is named as the Defendants for the Plaintiff's claim under the New Jersey Mistaken Imprisonment Act.

76.     Plaintiff, Alfred Smith was convicted of the crimes of second-degree robbery, N.J.S.A. 2C:15-1 and third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(4) and sentenced to a term of imprisonment of 10 years on the charge of robbery and 5 years on the charge of hindering on May 25, 2012.

77.     The Union County assistant prosecutor who tried the case for the State of New Jersey, Peter Benza, was new to the prosecutor's office and had little to no experience handling criminal trials.

78.     The Plainfield police who investigated the underlying crimes violated the Plaintiff's due process rights in the course of arresting him and improperly identifying him as the perpetrator of the crimes.  Specifically, they stopped, investigated and arrested an innocent man, the Plaintiff, Alfred Smith, who was in a park with his friends, based upon an overly vague and even conflicting description from the alleged victim of the person who committed the crime: "black shirt, brown windbreaker, 6 feet tall and scar on mouth" then "tall black male, jeans and a dark shirt".  Then, the police informed the victim that they had "apprehended him and he was across the street in the park…" and performed an improper "show-up" identification of the Plaintiff, who was wearing different clothing than either description given by the victim, who had no scar on his face and, in fact, had a beard.  The identification was done by the police while the Plaintiff was surrounded by two police officers and standing by a police car, further falsely implying his guilt.  The victim was never even asked to exit the patrol car, nor was the rear window of the car where she was sitting rolled down.  Plaintiff Smith, who made no attempt to flee from the police when they pulled up at the park where he was with his friends and who was not in possession of any stolen items, at all times maintained that he was innocent.

79.     The inexperienced Union County prosecutor used the improper identification to obtain a guilty verdict against the Plaintiff Smith, who maintained that he was innocent through trial.  Plaintiff Smith even shaved his beard, which he had worn for a decade, at the time of trial in order to demonstrate that he did not have the facial scar that the victim identified her actual attacker as having.

80.     The charge and conviction on the crime of "hindering" was based upon the Plaintiff's refusal to be forthcoming while he was being illegally arrested and detained by the police, and the conviction for "robbery" which was obtained using a false identification, was obtained by violating his rights to due process and equal protection by the Defendants.

81.     Plaintiff Smith did not commit the crimes for which he was convicted and did nothing but defend accusations that he had committed a crime, doing absolutely nothing by his own conduct to cause or bring about his conviction.

82.     The Plaintiff was incarcerated from the date of his arrest, on July 10, 2009, which incarceration continued until September 18, 2014, when he was released after the Appellate Division found in the published decision State of New Jersey v. Alfred J. Smith, 436 N.J. Super. 556 (App. Div. 2014) that the Defendants had violated his rights to Due Process under the law by performing the improper identification of him and using that identification at time of trial to obtain a conviction.   In vacating the convictions, the Appellate Division found that the "only specific detail" that the victim, DiMeglio, offered to identify Plaintiff Smith as her attacker was his clothing and were the result of the fact that she "continued to add details as time passed and those details, inexplicably, corresponded with the other evidence the State presented on this issue".  Further that the "only distinguishing feature she accurately offered was the color of his

24

skin" which was black, as he is an African American.  Finally, the Appellate Division found "no basis to conclude that she had an independent recollection of his appearance".

83.    It was decided as a matter of law by the Appellate Court that Plaintiff Smith was denied due process, that his conviction was improper and obtained though the use of impermissible evidence which  violated his constitutional rights.  Further that the prosecutoral discretion was exercised in a decision to discontinue prosecution of the case, indicating that the prosecutor agreed that there was no evidence that the Plaintiff was guilty of the crimes for which he was prosecuted.

84.    After the Appellate Division had vacated the convictions against Plaintiff Smith which had been completely based upon the emergence at the May, 2012 criminal trial of a new and never before heard description which completely and "inexplicably" corresponded with the rest of the newly appointed Assistant Prosecutor Benza's case, Union County declined to retry the case, as there was no actual evidence that Plaintiff Smith had committed the crimes of which he had been falsely accused.

85.    Therefore, it is both clear and convincing that there is no evidence that Plaintiff Smith committed the crimes of which he was convicted.

86.    As a direct and proximate cause of the Mistaken Imprisonment, as under the act, Plaintiff suffered damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, the State of New Jersey and the New Jersey Department of the Treasury for statutory damages, interest, counsel fees, costs of suit, and for an order of the court requiring that the probation department evaluate the Plaintiff's family situation, educational history, vocational training, employment history, and financial resources, housing situation and insurance coverage, and provide non-monetary relief

including vocational training, tuition assistance, emotional and career counseling, housing assistance and health insurance coverage in addition to any other relief that the court deems just.

## SEVENTH COUNT
## MALICOUS PROSECUTION

87.     Mr. Smith hereby incorporates by reference all of the foregoing and futher alleges as follows:

88.     Defendants Martina and Jackson initiated proceedigns against Mr. Smith, without probable cause, with malice or specific intent to injure and the proceedings ultimately terminated in the Plaintiff's favor.

89.     As a result of this malicious prosecution, Mr. Smith sustained the injuries and damages set forth above.

WHEREFORE, Plaintiff demands judgment against Defendants Martina and Jackson jointly and severally, for compensatory damages for pain, suffering, loss of enjoyment of life, statutory damages, punitive damages, interest, counsel fees, costs of suit and any other relief that the court deems just.

## JURY DEMAND

Pursuant to Federal Rule Civil Procedure 38, Plaintiffs hereby demand a trial by jury as to all Counts of the Complaint.

SHEBELL & SHEBELL, LLC
Counsel for Plaintiff

By:     /s/ John H. Sanders, II, Esq.
JOHN H. SANDERS, II, ESQ.

Dated: May 21, 2018

## CERTIFICATION OF VERIFICATION

I, Alfred Smith, of full age, verify as follows:

1.     I am the plaintiff named in the foregoing Complaint.  I have read the allegations thereof.

2.     I am familiar with the facts as set forth in the within Verified Complaint. The allegations thereof are true of my own personal knowledge, except where made upon information and belief, which allegations I believe to be true.

I certify under penalty of perjury that the foegoing statements made by me are true. I am aware thatif any of the foregoing statements made by me are willfully false, I am subject to punishment.

_Alfred J. Smith_
ALFRED SMITH

Dated: 11/7/17

Sworn to and subscribed before me
This 7th day of November 2017

Notary Public  JOCK SANDERS
ATTORNEY AT LAW
STATE OF NEW JERSEY